1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                         FOR THE DISTRICT OF ARIZONA

8

9   Ernest Valencia Gonzales,              )  No. CV-99-2016-PHX-SMM
                                           )
10                 Petitioner,             )  <u>DEATH PENALTY CASE</u>
                                           )
11  vs.                                    )
                                           )
12                                         )
                                           )  **ORDER RE: PROCEDURAL STATUS**
13  Dora B. Schriro, et al.,               )  **OF CLAIMS**
                                           )
14                 Respondents.            )
                                           )
15  ─────────────────────────────         )

16         Petitioner Ernest Gonzales ("Petitioner") filed an Amended Petition for Writ of

17  Habeas Corpus alleging that he is imprisoned and sentenced to death in violation of the

18  United States Constitution; the Amended Petition raises 60 claims for relief.  (Dkt. 28.)[1]

19                                   <u>**BACKGROUND**</u>

20         The following events, as set forth by the Arizona Supreme Court, resulted in

21  Petitioner's conviction for first-degree felony murder, first-degree burglary, aggravated

22  assault, armed robbery, theft and burglary.

23         Shortly before 7:00 p.m. on February 20, 1990, Roger Daughtry
           returned home from work and noticed that his porch light was on. He went
24         inside and saw that someone had disassembled his stereo and moved his
           speakers. Suddenly, a man appeared from behind the speakers, looked at
25         Daughtry, and ran out of the house. Daughtry later identified that man as
           Ernest Gonzales.
26         Minutes later, Jeri Sheer, Daughtry's neighbor, took out her trash with
           her dog, which ran toward a man holding what looked like a tire iron. Sheer

27  ─────────────────────────

28         [1]      "Dkt." refers to the documents in this Court's file.

looked at the man, grabbed her dog, and went back into her house. When she looked out the window, she noticed the man heading west, the direction of Darrel and Deborah Wagner's townhouse. Sheer later identified the man as Gonzales.

About 7:10 p.m., Darrel Wagner, his wife Deborah, and Deborah's seven-year-old son arrived home from dinner. As they walked into the small courtyard of their townhouse, they noticed that their front door was ajar. Darrel went to investigate while Deborah and her son waited at the gate. As Darrel pushed open the front door, both he and Deborah saw Gonzales standing on the stairway holding their VCR under his arm. Deborah immediately told her son to run to the neighbor's house and call 911. When she turned back toward her home, she saw Gonzales shove her husband out the front door. Darrel lost his balance and fell backward. Gonzales began to stab him repeatedly (seven times in all).

Deborah pleaded with Gonzales to leave. When he did not, Deborah jumped on Gonzales's back and wrapped her arms around him to keep him from stabbing Darrel. Gonzales then swung at Deborah and stabbed her twice. He also apparently wounded himself as he was flailing at Deborah. When Deborah fell off his back, Gonzales left with her purse. A few minutes later, Darrel helped his wife up and both went inside to call 911. Darrel collapsed on the floor during the call and died later that night. Deborah spent five days in intensive care.

Gonzales went from the Wagner residence to his girlfriend's house. She helped clean his wound. Her daughters, Catherine and Martha Trinidad, were there and testified at trial about comments Gonzales made the night of the murder, his clothing, and the "bag" he had with him containing a woman's driver's license and pictures of a boy with red hair--the color of Deborah's son's hair.

State v. Gonzales, 181 Ariz. 502, 506, 892 P.2d 838, 842 (1995).

Following his conviction, counsel for Petitioner filed a motion for a new trial.  (ROA 131.)[2]  In response, Petitioner filed a motion to proceed pro per and a motion to strike counsel's motion for a new trial, both of which were granted.  (Id. 134, 135; ROA-ME 68.) Petitioner also filed a supplemental motion for a new trial, in which he included numerous claims of ineffective assistance of counsel (IAC) at trial.  (ROA 138.)  The trial court held a three-day hearing, at which Petitioner's trial IAC allegations were considered and denied.

---

[2]     "ROA" refers to the 4-volume record on appeal from trial and sentencing, including minute entries (ME) and Arizona Supreme Court pleadings (Ariz.Sup.Ct.), prepared for Petitioner's direct appeal to the Arizona Supreme Court (Case No. CR-92-0154-AP).  "ROA-PCR" refers to the 11-volume record on appeal from post-conviction proceedings prepared for Petitioner's petition for review to the Arizona Supreme Court (Case No. CR-98-0422-PC).

1   (ROA-ME 78-80.)  Following an aggravation/mitigation hearing, Petitioner was sentenced
2   to death on the first-degree murder count.  (ROA 2 (Special Verdict).)

3         In September 1996 and December 1997, a petition and supplemental petitions for
4   post-conviction relief (PCR) were filed.  (ROA-PCR 441, 499, 500.)  In April 1998, the trial
5   judge denied the PCR petitions.  (ROA-PCR 518, Ex. D.)  A motion for rehearing was
6   denied.  (Id., Ex. E.)  Petitioner filed a Petition for Review and in October 1999, the Arizona
7   Supreme Court denied discretionary review.  (See ROA-PCR 517).  Petitioner then sought
8   habeas relief in this Court.

9         **PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT**

10        Because this case was filed after April 24, 1996, it is governed by the Antiterrorism
11   and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA").  Lindh v. Murphy,
12   521 U.S. 320, 336 (1997); Woodford v. Garceau, 538 U.S. 202, 210 (2003).  The AEDPA
13   requires that a writ of habeas corpus not be granted unless it appears that the petitioner has
14   exhausted all available state court remedies.  28 U.S.C. § 2254(b)(1); see also Coleman v.
15   Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509 (1982).  To properly
16   exhaust state remedies, the petitioner must "fairly present" his claims to the state's highest
17   court in a procedurally appropriate manner.  O'Sullivan v. Boerckel, 526 U.S. 838, 848
18   (1999).

19        A claim is "fairly presented" if the petitioner has described the operative facts and the
20   federal legal theory on which his claim is based so that the state courts have a fair
21   opportunity to apply controlling legal principles to the facts bearing upon his constitutional
22   claim.  Anderson v. Harless, 459 U.S. 4, 6 (1982); Picard v. Connor, 404 U.S. 270, 277-78
23   (1971).[3]  Commenting on the importance of fair presentation, the United States Supreme
24   Court has stated:

25   _____

26        [3]      Resolving whether a petitioner has fairly presented his claim to the state court
     is an intrinsically federal issue to be determined by the federal court.  Wyldes v. Hundley,
27   69 F.3d 247, 251 (8th Cir. 1995); Harris v. Champion, 15 F.3d 1538, 1556 (10th Cir. 1994).

28                                             - 3 -

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam).  Following Duncan, the Ninth Circuit Court of Appeals has held that a state prisoner has not "fairly presented" (and thus exhausted) federal claims in state court unless he specifically indicated to that court that the claims were based on federal law.  See, e.g., Lyons v. Crawford, 232 F.3d 666, 669-70 (2000), as amended by 247 F.3d 904 (9th Cir. 2001) (general reference to insufficiency of evidence, right to be tried by impartial jury and ineffective assistance of counsel lacked the specificity and explicitness required to present federal claim); Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000) (broad reference to "due process" insufficient to present federal claim); see also Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity between a claim of state and federal error is insufficient to establish exhaustion.").  A petitioner must make the federal basis of a claim explicit either by citing specific provisions of federal law or federal case law, even if the federal basis of a claim is "self-evident," Gatlin v. Madding, 189 F.3d 882, 888 (9th Cir. 1999), or by citing state cases that explicitly analyze the same federal constitutional claim, Peterson v. Lampert, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).  Such explicit fair presentation must be made not only to the trial or post-conviction court, but to the state's highest court.  Baldwin v. Reese, 124 S. Ct. 1347, 1351 (2004).  If a petitioner's habeas claim includes new factual allegations not presented to the state court, the claim may be considered unexhausted if the new facts "fundamentally alter" the legal claim presented and considered in state court.  Vasquez v. Hillery, 474 U.S. 254, 260 (1986).

A habeas petitioner's claims may be precluded from federal review in either of two ways.  First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds.  Coleman,

- 4 -

1    501 U.S. at 729-30.  Second, a claim may be procedurally defaulted if the petitioner failed

2    to present the claim in any forum and "the court to which the petitioner would be required

3    to present his claims in order to meet the exhaustion requirement would now find the claims

4    procedurally barred."  Coleman, 501 U.S. at 735 n.1.  This is often referred to as "technical"

5    exhaustion because although the claim was not actually exhausted in state court, the

6    petitioner no longer has an available state remedy.  See id. at 732 ("A habeas petitioner who

7    has defaulted his federal claims in state court meets the technical requirements for

8    exhaustion; there are no remedies any longer 'available' to him."); Gray v. Netherland, 518

9    U.S. 152, 161-62 (1996).

10         Rule 32 of the Arizona Rules of Criminal Procedure governs when petitioners may

11   seek relief in post-conviction proceedings and raise federal constitutional challenges to their

12   convictions or sentences in state court.  Rule 32.2 provides, in part:

13           a.  Preclusion.  A defendant shall be precluded from relief under this
             rule based upon any ground:
14           . . . .

15           (2)  Finally adjudicated on the merits on appeal or in any previous
             collateral proceeding;

16
             *(3)  That has been waived at trial, on appeal, or in any previous
17           collateral proceeding.*

18           b.  Exceptions.  Rule 32.2(a) shall not apply to claims for relief based
             on Rules 32.1(d), (e), (f), (g) and (h).  When a claim under [these sub-sections]
19           is to be raised in a successive or untimely post-conviction relief proceeding,
             the notice of post-conviction relief must set forth the substance of the specific
20           exception and the reasons for not raising the claim in the previous petition or
             in a timely manner.  If the specific exception and meritorious reasons do not
21           appear substantiating the claim and indicating why the claim was not stated in
             the previous petition or in a timely manner, the notice shall be summarily
22           dismissed.

23   Ariz. R. Crim. P. 32.2 (West 2003) (emphasis added).  Thus, pursuant to Rule 32.2,

24   petitioners may not be granted relief on any claim which could have been raised in a prior

25   petition for post-conviction relief.  Only if a claim falls within certain exceptions

26   (subsections (d) through (h) of Rule 32.1) and the petitioner can justify why the claim was

27   omitted from a prior petition or not presented in a timely manner will the preclusive effect

28                                           - 5 -

1   of Rule 32.2 be avoided.  Ariz. R. Crim. P. 32.2(b), 32.4(a).

2          Therefore, in the present case, if there are claims which have not been raised
3   previously in state court, the Court must determine whether Petitioner has state remedies
4   currently available to him pursuant to Rule 32.  If no remedies are currently available,
5   petitioner's claims are "technically" exhausted but procedurally defaulted.  Coleman, 501
6   U.S. at 732, 735 n.1.  In addition, if there are claims that were fairly presented in state court
7   but found defaulted on state procedural grounds, such claims also will be found procedurally
8   defaulted in federal court so long as the state procedural bar was independent of federal law
9   and adequate to warrant preclusion of federal review.  Harris v. Reed, 489 U.S. 255, 262
10  (1989).  A state procedural default is not independent if, for example, it depends upon an
11  antecedent federal constitutional ruling.  See Stewart v. Smith, 536 U.S. 856 (2002) (per
12  curiam).  A state bar is not adequate unless it was firmly established and regularly followed
13  at the time of application by the state court.  Ford v. Georgia, 498 U.S. 411, 423-24 (1991).

14         Because the doctrine of procedural default is based on comity, not jurisdiction, federal
15  courts retain the power to consider the merits of procedurally defaulted claims.  Reed v.
16  Ross, 468 U.S. 1, 9 (1984).  As a general matter, the Court will not review the merits of
17  procedurally defaulted claims unless a petitioner demonstrates legitimate cause for the failure
18  to properly exhaust in state court and prejudice from the alleged constitutional violation, or
19  shows that a fundamental miscarriage of justice would result if the claim were not heard on
20  the merits in federal court.  Coleman, 501 U.S. at 735 n.1.

21         Ordinarily "cause" to excuse a default exists if a petitioner can demonstrate that "some
22  objective factor external to the defense impeded counsel's efforts to comply with the State's
23  procedural rule."  Id. at 753.  Objective factors which constitute cause include interference
24  by officials which makes compliance with the state's procedural rule impracticable, a
25  showing that the factual or legal basis for a claim was not reasonably available to counsel,
26  and constitutionally ineffective assistance of counsel.  Murray v. Carrier, 477 U.S. 478, 488
27  (1986).  "Prejudice" is actual harm resulting from the alleged constitutional error or violation.

28

1   <u>Magby v. Wawrzaszek</u>, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice resulting

2   from a procedural default, a habeas petitioner bears the burden of showing not merely that

3   the errors at his trial constituted a possibility of prejudice, but that they worked to his actual

4   and substantial disadvantage, infecting his entire trial with errors of constitutional dimension.

5   <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982).

6        If a petitioner cannot meet the cause and prejudice standard, the Court still may hear

7   the merits of procedurally defaulted claims if the failure to hear the claims would constitute

8   a "fundamental miscarriage of justice." <u>Sawyer v. Whitley</u>, 505 U.S. 333 (1992). The

9   "fundamental miscarriage of justice" exception is also known as the actual or procedural

10  innocence exception. There are two types of claims recognized under this exception: (1) that

11  a petitioner is "innocent of the death sentence," or, in other words, that the death sentence

12  was erroneously imposed; and (2) that a petitioner is innocent of the capital crime. In the

13  first instance, the petitioner must show by clear and convincing evidence that, but for a

14  constitutional error, no reasonable factfinder would have found the existence of any

15  aggravating circumstance or some other condition of eligibility for the death sentence under

16  the applicable state law. <u>Id.</u> at 336. In the second instance, the petitioner must show that "a

17  constitutional violation has probably resulted in the conviction of one who is actually

18  innocent." <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995). To establish the requisite probability,

19  the petitioner must show that "it is more likely than not that no reasonable juror would have

20  found petitioner guilty beyond a reasonable doubt." <u>Id.</u> Furthermore:

21      [A] substantial claim that constitutional error has caused the conviction of an
    innocent person is extremely rare. . . . To be credible, such a claim requires
22  petitioner to support his allegations of constitutional error with new reliable
    evidence—whether it be exculpatory scientific evidence, trustworthy
23  eyewitness accounts, or critical physical evidence—that was not presented at
    trial. Because such evidence is obviously unavailable in the vast majority of
24  cases, claims of actual innocence are rarely successful.

25  <u>Id.</u> at 324.

26                        **PROCEDURAL STATUS OF CLAIMS**

27      Of the 60 claims Petitioner presented, Respondents concede that Claims 4, 5, 9, 13-16,

28

27, 32-34, 36, 38, 40-42 and 53-55 are exhausted or partially exhausted. To the extent Respondents concede exhaustion, those claims, or portions of those claims, will be reviewed on the merits. The Court will not review Claims 2, 3, 12, 21-25, 35, 37, 43, 44, 51, 52 and 56-58 because they were withdrawn by Petitioner. (Dkt. 43, 79.) Respondents assert that the balance of Petitioner's claims are procedurally barred from habeas review on the merits. The Court addresses each of these claims in turn.

**I.    Exhaustion Analysis**

*Fifth Amendment Due Process*

With respect to almost every claim, Petitioner alleges that his due process rights under the 5th Amendment were violated. It is the 14th Amendment, not the 5th Amendment that protects a person against deprivations of due process by a state. See U.S. Const. amend. XIV, § 1 ("nor shall any state deprive any person of life, liberty, or property without due process of law"); Castillo v. McFadden, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States."). Regardless of any concession by Respondents concerning exhaustion, because the 5th Amendment Due Process Clause does not provide a cognizable ground for relief regarding Petitioner's state court conviction, the allegations that the 5th Amendment Due Process Clause was violated will be dismissed in Claim 1 as well as every other claim; it will not be discussed below with respect to the individual claims.

*Eighth Amendment Claims*

With respect to almost every claim, Petitioner alleges that his right to be free of cruel and unusual punishment pursuant to the 8th Amendment was violated. The right to be free of cruel and unusual punishment, by definition, is a protection related to the imposition or carrying out of a sentence. In other words, the protection afforded by the 8th Amendment does not attach until a person is convicted and subject to punishment by the state. See Ingraham v. Wright, 430 U.S. 651, 664, 667, 671 n.40 (1977) (summarizing that the 8th

Amendment circumscribes only the type of punishment imposable on those convicted, punishment grossly disproportionate to the crime and what can be criminalized and punished); <u>Bell v. Wolfish</u>, 441 U.S. 520, 536 n.16 (1979) (noting that the 8th Amendment has no application to pretrial detainees).  There is no cognizable claim that Petitioner's rights under the 8th Amendment were violated as to claims relating solely to his conviction. Because the 8th Amendment does not provide a cognizable ground for relief regarding conviction-related claims, the allegations that the 8th Amendment was violated will be dismissed as to Claims 1-28, and will not be discussed below with respect to the individual claims.

**Claim 1        Trial Court Did Not Allow Redetermination of Probable Cause on Counts 1-4 of the Indictment in Violation of the 5th, 6th, 8th and 14th Amendments.**

Petitioner asserts that he exhausted Claim 1 in his direct appeal.  In his direct appeal, Petitioner asserted Claim 1 as a violation of his substantive due process rights under the 5th and 14th Amendments.  (Opening Br. at 60-61.)  The Arizona Supreme Court ruled that the claim was meritless.  <u>Gonzales</u>, 181 Ariz. at 507, 892 P.2d at 843.

Respondents contend that Petitioner did not raise Claim 1 in a procedurally appropriate manner because it should have been raised prior to trial in a special action seeking discretionary appellate review.  (Dkt. 47 at 10.)  The Arizona Supreme Court bypassed any alleged procedural default by resolving Claim 1 on the merits.  <u>Gonzales</u>, 181 Ariz. at 507, 892 P.2d at 843.  Therefore, Petitioner exhausted the 14th Amendment aspect of Claim 1.

Petitioner failed to raise any 6th Amendment argument regarding Claim 1 in state court. Petitioner alleges that the Arizona Supreme Court's statutory review for fundamental error exhausted his 6th Amendment argument.  The Court rejects Petitioner's assertion that such fundamental error review exhausted any federal constitutional error not specifically presented to that court.  Pursuant to statute, the Arizona Supreme Court reviewed the record in Petitioner's case for fundamental error.  <u>See</u> A.R.S. § 13-4035 (repealed by Laws 1995,

1  Ch. 198, § 1); Gonzales, 181 Ariz. at 516, 892 P.2d at 852.  Petitioner argues that any federal
2  constitutional error appearing in the state court record which could be viewed as fundamental
3  error was thereby properly exhausted for federal habeas purposes.  (Dkt. 48 at 3-7.)  The
4  Ninth Circuit has rejected this argument.  See Poland (Michael) v. Stewart, 117 F.3d 1094,
5  1105 (9th Cir. 1997) (Arizona's process of fundamental error review does not excuse a
6  petitioner's failure to present federal claims to the state's highest court); Martinez-Villareal
7  v. Lewis, 80 F.3d 1301, 1306 (9th Cir. 1996) (rejecting argument that review for fundamental
8  error by Arizona Supreme Court prevents procedural preclusion from attaching); cf. Sochor
9  v. Florida, 504 U.S. 527, 534 (1992) (stating that no Florida authority supported Justice
10  Stevens suggestion that all federal constitutional error would automatically be considered
11  fundamental and therefore part of that court's fundamental error review).[4]
12      Next, Petitioner alleges that the Arizona Supreme Court's independent sentencing
13  review exhausted the 6th Amendment aspect of Claim 1.  The Court rejects this argument.
14  In the direct appeal of a death sentence, the Arizona Supreme Court independently examines
15  whether the sentence of death has been imposed under the influence of passion, prejudice,
16  or any other arbitrary factors.  State v. Richmond, 114 Ariz. 186, 196, 560 P.2d 41, 51
17  (1976).  Such independent examination encompasses review of aggravating and mitigating
18  circumstances found by the trial court to ensure that the capital sentence has been properly
19  imposed.[5]  See State v. Brewer, 170 Ariz. 486, 493-94, 826 P.2d 783, 790-91 (1992).  Based
20
21  
22      [4]    To the extent Petitioner argues that the Arizona Supreme Court's statutory
23  fundamental error review exhausted other claims (or parts of claims) that were not
   specifically presented on direct appeal, in addition to the 6th Amendment aspect of Claim 1,
24  the Court concludes that such review did not exhaust those allegations.
25      [5]    In 2002, following the U.S. Supreme Court's decision in Ring v. Arizona, 536
   U.S. 584 (2002), the Arizona legislature adopted a new capital sentencing scheme providing
26  for jury sentencing and eliminating independent sentencing review by the Arizona Supreme
27  Court for all death sentences determined by the jury.  See A.R.S. § 13-703.05 (West Supp.
   2002).
28                                    - 10 -

1    on the Arizona Supreme Court's stated scope of its independent sentencing review, and the

2    fact that Claim 1 has no relation to Petitioner's death sentence, such review did not exhaust

3    the 6th Amendment aspect of Claim 1.

4        If Petitioner were to return to state court now and attempt to litigate the 6th

5    Amendment aspect of Claim 1, it would be found waived and untimely under Rules

6    32.2(a)(3)[6] and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall

7    within an exception to preclusion. See Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). Therefore, the

8    allegation is "technically" exhausted but procedurally defaulted because Petitioner no longer

9    has an available state remedy. Coleman, 501 U.S. at 732, 735 n.1. Accordingly, the 6th

10   Amendment aspect of Claim 1 will not be considered on the merits absent a showing of cause

11

12   ───────────────

13   [6]    To the extent the Court concludes throughout this Order that Petitioner does
     not have an available remedy in state court, because claims or portions of claims would be

14   precluded as waived pursuant to Rule 32.2(a)(3), Petitioner does not assert that any
     exceptions to preclusion are applicable. See Beaty v. Stewart, 303 F.3d 975, 987 & n.5 (9th

15   Cir. 2002) (finding no state court remedies and noting that petitioner did not raise any
     exceptions to Rule 32.2(a)). First, Petitioner does not assert the application of any of the

16   preclusion exceptions enumerated in Rule 32.2(b)(2)–expired sentence, newly discovered

17   material facts, no fault untimely appeal or PCR proceeding, significant change in the law, or
     actual innocence of crime or death sentence–and the Court finds that none of them apply.

18   See Ariz. R. Crim. P. 32.2(b)(2); 32.1(d) - (h).  Second, Petitioner does not argue that any
     of the claims are of the type that cannot be waived absent a personal knowing, voluntary and

19   intelligent waiver.  Cf. Cassett v. Stewart, 406 F.3d 614, 622-23 (9th Cir. 2005)(addressing

20   waiver because raised by petitioner).
         The Court concludes, as to all of the claims in this Order for which the Court

21   determines there is no available remedy in state court pursuant to Rule 32.2(a)(3), that none

22   of those claims fall within the limited framework of claims requiring a knowing, voluntary
     and intelligent waiver.  See Ariz. R. Crim. P. 32.2(a)(3) cmt. (West 2004) (noting that most

23   claims of trial error do not require a personal waiver); Stewart v. Smith, 202 Ariz. 446, 449,

24   46 P.3d 1067, 1070 (2002) (identifying the right to counsel, right to a jury trial and right to
     a 12-person jury under the Arizona Constitution as the type of claims that require personal

25   waiver); see also State v. Espinosa, 200 Ariz. 503, 505, 29 P.3d 278, 280 (Ct. App. 2001)

26   (withdrawal of plea offer in violation of due process not a claim requiring personal waiver);
     but cf. Cassett, 406 F.3d at 622-23 (finding claim not defaulted because unclear whether

27   personal waiver would be required under state law).

28                                      - 11 -

1  and prejudice or fundamental miscarriage of justice.  The 14th Amendment aspect of Claim

2  1 will be decided on the merits.

3  **Claim 6     Trial Court Improperly Admitted as Evidence the Contents of an Illegal
         Search in Violation of the 5th, 6th, 8th and 14th Amendments**.

4
          Petitioner asserts that he fairly presented Claim 6 in his direct appeal.  On appeal,

5  Petitioner argued that the admission of a bloody towel and a tire iron constituted fundamental

6  error because they were the fruit of an illegal search and seizure by police in violation of his

7  rights under the 4th and 14th Amendment.  (Opening Br. at 44-49.)

8
          Petitioner now couches this claim as a violation of the 5th, 6th, and 8th Amendments

9  rather than the 4th Amendment.  Regardless, Claim 6 will be denied as non-cognizable.

10  Petitioner's claim is premised entirely on the allegation that the search and seizure were

11  "illegal."  On habeas review, a federal court may not consider a claim that evidence obtained

12  in violation of the 4th Amendment should have been excluded at trial where the petitioner

13  had a full and fair opportunity to litigate the claim in state court.  See Stone v. Powell, 428

14  U.S. 465 (1976).  In Stone, the Court reasoned that the exclusionary rule for 4th Amendment

15  violations is not a personal constitutional right but instead is primarily a judicially-created

16  structural remedy designed to safeguard 4th Amendment rights generally through its

17  deterrent effect.  Petitioner had a full and fair opportunity to litigate Claim 6 in state court.

18  Prior to trial, Petitioner filed a motion in limine to prohibit the introduction of the tire iron

19  into evidence on the basis of relevancy.  (ROA 63.)  Petitioner did not similarly move to

20  suppress introduction of the bloody towel into evidence.  The trial court conducted a hearing

21  and determined that the tire iron was relevant evidence and could be introduced at trial.  (RT

22  1/16/91 at 93-95; ME 29).  Pursuant to Stone v. Powell, Claim 6 is denied as non-cognizable.

23  **Claim 7     Trial Court Improperly Ruled To Allow Petitioner's Involuntary
         Statements to be Used to Impeach Him if He Chose to Testify at Trial in
         Violation of the 5th, 6th, 8th and 14th Amendments**.

24

25          Petitioner argues that he exhausted Claim 7 in his direct appeal.  In his direct appeal,

26  Petitioner raised Claim 7 as a violation of the 6th and 14th Amendments.  (Opening Br. at

27

28                                             - 12 -

1    49-53.)  Respondents contend that because Petitioner did not testify at trial, he waived his

2    right to object to the ruling on appeal and, thus, procedurally defaulted Claim 7.  Petitioner

3    challenges the adequacy of the procedural bar contending that this particular rule was not in

4    effect at the time of his hearing and, therefore, could not have been regularly and consistently

5    applied.  (Dkt. 48 at 22.)

6         Before a state procedural ruling is adequate to bar further habeas review, the

7    procedural bar must be firmly established and regularly followed at the time it is applied.

8    Ford v. Georgia, 498 U.S. 411, 424 (1991).  As authority for the procedural bar, Respondents

9    cite State v. Connor, 163 Ariz. 97, 786 P.2d 948 (1990), which held that by choosing not to

10   testify a defendant waives his right to challenge the court's pretrial ruling that statements

11   made in violation of Miranda v. Arizona, 384 U.S. 436 (1966), would be admissible to

12   impeach.  The Connor rule only dealt with statements made in violation of Miranda, not

13   involuntary statements.  The court in Gonzales acknowledged that it was an issue of first

14   impression whether the same rule would hold true for allegedly involuntary statements.  181

15   Ariz. at 512, 892 P.2d at 848.  The court determined that "[w]hether the impeaching

16   statement was obtained in violation of Miranda or was involuntary, prejudice is hypothetical

17   when the defendant does not testify. We hold that by choosing not to testify, Gonzales

18   waived his right to claim that the trial court erroneously ruled involuntary statements

19   admissible to impeach."  Id.  Because the procedural bar was created and applied for the first

20   time in Petitioner's appeal, it was not firmly established and regularly followed at the time

21   of his trial. See Ford, 498 U.S. at 424.  Therefore, it is not adequate to bar further habeas

22   review; the 6th and 14th Amendment aspects of Claim 7 will be reviewed on the merits.

23   **Claim 8      Trial Court Improperly Ruled To Allow Petitioner's Prior Convictions to
                    be Used to Impeach Him if He Chose to Testify at Trial in Violation of the**
24                  **5th, 6th, 8th and 14th Amendments**.

25        Petitioner argues that he exhausted Claim 8 on direct appeal.  Review of Petitioner's

26   appellate brief demonstrates that he did not fairly present Claim 8.  Petitioner mentioned a

27   constitutional right to due process but did not cite to the federal constitution or authority

28                                              - 13 -

1    demonstrating that he was fairly presenting a federal constitutional argument.  This was

2    insufficient to fairly alert the state court to the federal constitutional underpinning of Claim

3    8.  See Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999) ("[G]eneral appeals to broad

4    constitutional principles, such as due process, equal protection, and the right to a fair trial,

5    are insufficient to establish exhaustion.").  If Petitioner were to return to state court now to

6    litigate Claim 8, it would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a)

7    of the Arizona Rules of Criminal Procedure because it does not fall within an exception to

8    preclusion.  See Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h).  Therefore, Claim 8 is technically

9    exhausted but procedurally defaulted.  Claim 8 will be barred from consideration absent a

10   showing of cause and prejudice or a fundamental miscarriage of justice.

11   **Claim 10        Discriminatory Use of Peremptory Challenges by Prosecutor in Violation of the 5th, 6th, 8th and 14th Amendments**.

12

13   **Claim 11        Trial Court Erred in Not Severing the Burglary Charge (Daughtry) from His Murder Trial in Violation of the 5th, 6th, 8th and 14th Amendments**.

14           Petitioner argues that he exhausted Claims 10 and 11 on direct appeal.  Review of

15   Petitioner's appellate brief demonstrates that Petitioner exhausted his 6th and 14th

16   Amendment arguments in Claim 10 and 11. (Opening Br. at 37-38.)  Respondents contend

17   that because Petitioner failed to preserve these alleged trial court errors he procedurally

18   defaulted them.  In response, Petitioner challenges the adequacy of the procedural bars that

19   Respondents assert for Claims 10 and 11.  Respondents counter that adequate procedural bars

20   do support the procedural default of Claims 10 and 11.  (Dkt. 48 at 23-32, 39-44; Dkt. 54 at

21   21-24, 27-29.)  Specifically, in Claim 10, Petitioner's untimely Batson v. Kentucky, 476 U.S.

22   79 (1986), challenge to the composition of the jury waived the claim on appeal because the

23   challenge was made after the jury was empaneled and the venire excused.  See State v.

24   Harris, 157 Ariz. 35, 36, 754 P.2d 1139, 1140 (1988).  In Claim 11, Petitioner's failure to

25   renew his pre-trial motion to sever waived the claim because by court rule a motion to sever

26   must be renewed during trial or at the close of the evidence or it is waived on appeal.  See

27   State v. Haas, 138 Ariz. 413, 425, 675 P.2d 673, 685 (1984) (citing and applying Arizona

28                                                      - 14 -

1   Rule of Criminal Procedure 13.4(c)).

2   Because of Petitioner's waiver of Claims 10 and 11, the Arizona Supreme Court stated
3   that it reviewed these claims for fundamental error only. Gonzales, 181 Ariz. at 507-08, 892
4   P.2d at 843-44. In its review for fundamental error, however, the Arizona Supreme Court
5   organized Claims 10 and 11 into the "Issues Waived" section, and did not substantively
6   consider the merits of Claim 10 or 11. Id. Because the Arizona Supreme Court's decision
7   does not lend itself to the fair interpretation that it reviewed Claims 10 or 11 on the merits,
8   the Court finds that it did not bypass the procedural default of such claims. See Walker v.
9   Endell, 850 F.2d 470, 475 (9th Cir. 1987). Thus, Claims 10 and 11 are technically exhausted
10  but procedurally defaulted because they do not allege facts or law which would exempt them
11  from preclusion and untimeliness pursuant to Rules 32.2(a)(3) and 32.4(a) of the Arizona
12  Rules of Criminal Procedure, were Petitioner to return to state court now. See Ariz. R. Crim.
13  P. 32.2(b), 32.1(d)-(h); Coleman, 501 U.S. at 732, 735 n.1. Claims 10 and 11 will be barred
14  from further consideration absent a showing of cause and prejudice or a fundamental
15  miscarriage of justice.

16  **Claim 17   Trial Court's Admission of Wagner's Courtroom Identification of
17  Petitioner was Tainted by Exposure to Petitioner at First Trial in
    Violation of the 5th, 6th, 8th and 14th Amendments**.

18  **Claim 19   Trial Court Improperly Failed to Declare Mistrial When Two State
19  Witnesses Failed to Obey Exclusion Order and Stayed in the Courtroom
    in Violation of the 5th, 6th, 8th and 14th Amendments**.

20  **Claim 20   Trial Court Erred by Not Summoning Counsel When Jury Submitted
21  Note to Judge and Judge Discussed Note with Jurors in Violation of the
    5th, 6th, 8th and 14th Amendments**.

22  **Claim 26   Trial Court Committed Fundamental Error by Not Properly Defining
23  Reasonable Doubt for the Jury in Jury Instructions in Violation of the
    5th, 6th, 8th and 14th Amendments**.

24  Petitioner fairly presented Claims 17, 20 and 26 in his direct appeal. (Opening Br. at
25  25-28, 38-41, 66.) Petitioner's appellate brief further demonstrates that he exhausted his 14th
26  Amendment argument in Claim 19. (Opening Br. at 61-66.) However, the Arizona Supreme
27  Court found Claim 17 waived because Petitioner failed to object to the identification before

28                                    - 15 -

his second trial, <u>Gonzales</u>, 181 Ariz. at 510, 892 P.2d at 846.  Similarly, Petitioner's failure to object to the violation of a witness "sequestration order" at his second trial waived Claim 19.  <u>See</u> <u>State v. Thomas</u>, 130 Ariz. 432, 435, 636 P.2d 1214, 1217 (1981) (stating that it is well-established that failure to object to testimony waives the matter on appeal.)  The Arizona Supreme Court also found Claims 20 and 26 waived for failure to object at trial. <u>Id.</u> at 508, 892 P.2d at 844.  Petitioner does not challenge the adequacy of the procedural default for Claim 19.

In Arizona courts, it is well-established that an objection to proffered testimony must be made either prior to or at the time it is given, and failure to do so constitutes a waiver. This contemporaneous objection rule has been applied by the Arizona Supreme Court in numerous contexts. <u>See, e.g.</u>, <u>State v. Detrich</u>, 188 Ariz. 57, 64, 932 P.2d 1328, 1335 (1997) ("The purpose of a contemporaneous objection requirement is to allow for an immediate remedy for potentially improper or unconstitutional activities."); <u>State v. Bolton</u>, 182 Ariz. 290, 306 n. 5, 896 P.2d 830, 846 n. 5 (1995) (regarding witness testimony); <u>Harrington v. Beauchamp Enters.</u>, 158 Ariz. 118, 120, 761 P.2d 1022, 1024 (1988) (regarding jury instruction).  Here, with respect to all four claims, however, the Arizona Supreme Court exercised its discretion to review for fundamental error.  Although lacking in overly extensive analysis, the Arizona Supreme Court clearly reached and rejected the merits of Claim 17. <u>Gonzales</u>, 181 Ariz. at 510, 892 P.2d at 846.  Similarly, as to Claims 20 and 26, the court specifically indicated that it had reviewed the merits of both claims and found no error, let alone fundamental error. <u>Id.</u> at 508, 892 P.2d at 844.  In Claim 19, the Arizona Supreme Court specifically addressed the merits and found that the trial court did not commit fundamental error by failing to declare a mistrial *sua sponte*. <u>Id.</u>  Because the Arizona Supreme Court exercised its discretion to review the merits of these four claims for fundamental error, the court's review lends itself to the fair interpretation that all four claims were reviewed on the merits. <u>See</u> <u>Walker</u>, 892 F.2d at 475.  Consequently, Claims 17, 19, 20, and 26 will be reviewed by this Court on the merits.

**Claim 18      Trial Court Improperly Admitted Blood and Weatherstripping Evidence Despite Prejudicial Nature and Lack of Chain of Custody in Violation of the 5th, 6th, 8th and 14th Amendments**.

Petitioner argues that he exhausted Claim 18 on direct appeal.  In his direct appeal, Petitioner argued the factual basis of Claim 18 as a denial of due process of law in violation of the 5th Amendment.  (Opening Br. at 33-37.)  Petitioner fairly presented and exhausted the 5th Amendment aspect of this claim but such an argument does not state a cognizable ground of relief.  See supra Claim 1.  Petitioner did not raise the 6th or 14th Amendment aspects of Claim 18 in state court.  (Opening Br. at 33-37.)  The Court concludes that the 6th and 14th Amendment aspects of Claim 18 are technically exhausted but procedurally defaulted because they do not allege facts or law which would exempt them from preclusion and untimeliness pursuant to Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure, were Petitioner to return to state court now.  See Ariz. R. Crim. P. 32.2(b), 32.1(d)-(h); Coleman, 501 U.S. at 732, 735 n.1.  The 6th and 14th Amendment aspects of Claim 18 will be barred from further consideration absent a showing of cause and prejudice or a fundamental miscarriage of justice.

**Claim 28      Trial Court Improperly Denied Petitioner's Motion for a New Trial in Violation of the 5th, 6th, 8th and 14th Amendments**.

Petitioner argues that he raised Claim 28 on direct appeal through a footnote that allegedly incorporated and preserved all of the federal constitutional claims that he raised in his motion for new trial.  (Dkt. 48 at 52.)  Petitioner did not raise an independent claim in his appellate brief based on the denial of his motion for new trial.  Rather, Petitioner stated: "Counsel notes that in raising any issues that were urged as error in the motions for new trial, she intends to preserve for error the trial court's abuse of discretion when it denied the motion for new trial based on issues raised below and the motions in their entirety." (Opening Br. at 1 n.2.)

Exhaustion requires a petitioner to include a reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle a petitioner to relief.

- 17 -

See <u>Gray</u>, 518 U.S. at 163; <u>see also</u> <u>Baldwin</u>, 541 U.S. at 31-32 (finding incorporation by reference insufficient to exhaust a constitutional claim before a state supreme court). Petitioner's footnote did not put the Arizona Supreme Court on notice that it was being asked to consider specific federal constitutional issues arising out of the trial court's denial of Petitioner's motion for new trial.  The footnote merely attempted to preserve a claim that denial of the motion for new trial was an abuse of discretion.  Because Petitioner did not set forth a specific federal constitutional guarantee and a statement of the facts entitling him to relief based on the trial court's denial of his motion for new trial, he did not exhaust Claim 28 before the Arizona Supreme Court.  The Court concludes that Claim 28 is technically exhausted but procedurally defaulted because it does not allege facts or law which would exempt it from preclusion and untimeliness pursuant to Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure, were Petitioner to return to state court now.  <u>See</u> Ariz. R. Crim. P. 32.2(b), 32.1(d)-(h); <u>Coleman</u>, 501 U.S. at 732, 735 n.1.  Claim 28 will be barred from further consideration absent a showing of cause and prejudice or a fundamental miscarriage of justice.

**Claim 29      Trial Court Improperly Concluded That There Was Sufficient Evidence of Creation of Grave Risk of Harm to Another to Support the Aggravating Circumstance in Violation of the 5th, 6th, 8th and 14th Amendments**.

**Claim 30      Trial Court Improperly Concluded That There Was Sufficient Evidence of Pecuniary Gain to Support the Aggravating Circumstance in Violation of the 5th, 6th, 8th and 14th Amendments**.

In Claims 29 and 30, Petitioner contends that the trial court improperly concluded that sufficient evidence existed to support the aggravating circumstance of grave risk of harm to another and the aggravating circumstance of pecuniary gain.  (Dkt. 28 at 100-103.) Respondents contend that Claims 29 and 30 are procedurally defaulted.  Petitioner responds that on direct appeal he fairly presented Claim 29 as an 8th Amendment violation.  Further, he argues that the Arizona Supreme Court's independent review of his death sentence exhausted both claims.  (Dkt. 48 at 52-57.)

1     On direct appeal, Petitioner presented Claim 29 as an 8th Amendment violation.

2  (Opening Br. at 10.)  Thus, Petitioner did fairly present the 8th Amendment aspect of Claim

3  29; however, Petitioner did not fairly present the 6th or 14th Amendment aspects of Claim

4  29, nor the 6th, 8th or 14th Amendment aspects of Claim 30.

5     As discussed with respect to Claim 1, in every capital appeal, the Arizona Supreme

6  Court undertakes an independent review to determine whether the death sentence has been

7  appropriately imposed.  See, e.g., Gonzales, 181 Ariz. at 513, 892 P.2d at 849.  Whether such

8  independent review exhausts a federal constitutional challenge to the sufficiency of the

9  evidence supporting the existence of an aggravating circumstance is an open question in the

10  Ninth Circuit.  Cf. Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002).

11     To answer this question, the Court first considers the historical context in which such

12  review was mandated.  In 1972, in Furman v. Georgia, 408 U.S. 238 (1972), the Supreme

13  Court struck down Georgia's death penalty statute as violative of the Eighth Amendment.

14  The Furman Court held that the death penalty could no longer be constitutionally imposed

15  under sentencing procedures that created a substantial risk that it would be inflicted in an

16  arbitrary and capricious manner.  Id. at 313.  In response, state legislatures (including

17  Arizona) amended their death penalty statutes to address the Constitutional concerns raised

18  by Furman.  See Gregg v. Georgia, 428 U.S. 153, 179-80 (1976).  In order to ensure that the

19  death penalty was not imposed in an arbitrary and capricious manner, Arizona's amended

20  statute established aggravating circumstances and mitigating factors and permitted imposition

21  of the death penalty only when the sentencing court found at least one aggravating factor

22  beyond a reasonable doubt and no mitigating factors sufficiently substantial to warrant

23  leniency. A.R.S. §§ 13-452 to 13-454 (1976).

24     In 1976, the U.S. Supreme Court announced three decisions upholding three different

25  states' amended death penalty statutes.  See Gregg v. Georgia, 428 U.S. 153 (1976); Proffitt

26

27

28                                        - 19 -

1    v. Florida, 428 U.S. 242 (1976); Jurek v. Texas, 428 U.S. 262 (1976).[7]  The Court determined

2    that each of the state death penalty schemes under review adequately narrowed and

3    channeled a sentencer's discretion so as to minimize the risk of arbitrary and capricious

4    imposition of the death penalty.

5           Following these cases, in State v. Richmond, 114 Ariz. 186, 195-96, 560 P.2d 41, 50-

6    51 (1976), the Arizona Supreme Court rejected broad challenges to the constitutionality of

7    Arizona's amended death penalty statute.  Because Arizona's statute was similar in kind to

8    the statutory scheme found constitutional in Gregg, the court held that: "Arizona's system

9    for the imposition of the death penalty, based on aggravating and mitigating circumstances,

10   insures that the sentencing authority is given adequate information and guidance." Id. at 195,

11   560 P.2d at 50.   Regarding vagueness in the statute, the Richmond court rejected the

12   contention that Arizona's aggravating and mitigating circumstances were too vague or

13   subjective to satisfy the concerns raised in Furman.  Id.  Because of the similarity between

14   Arizona's and Florida's statute on this point and because the Florida death penalty statute had

15   been approved by the Supreme Court in Proffitt, the Arizona Supreme Court held that this

16   aspect of Arizona's death penalty statute was also constitutional.  Id.

17          After upholding the death penalty statute against these and other Constitutional

18   challenges, the Richmond court took an additional step and announced that, due to the

19   gravity of the death penalty, it would undertake an independent review of all death sentences,

20   as follows:

21          [T]he gravity of the death penalty requires that we painstakingly examine the
            record to determine whether it has been erroneously imposed.  Furthermore,
22          because A.R.S. § 13-454 sets out the factors which must be found and
            considered by the sentencing court, **we necessarily undertake an**

23

24   _____

25          [7]      The Court struck down two other State capital sentencing schemes declaring
     unconstitutional mandatory death penalty statutes.  See Woodson v. North Carolina, 428 U.S.
26   280 (1976); Roberts v. Louisiana, 428 U.S. 325 (1976) (concluding that a death penalty
     statute cannot automatically impose a sentence of death without allowing individualized
27   consideration of relevant mitigation before final sentencing decision).

28                                          - 20 -

**independent review of the facts that establish the presence or absence of aggravating and mitigating circumstances.** We must determine for ourselves if the latter outweigh the former when we find both to be present. In performing this review we find it necessary to determine whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factors; **whether the evidence supports the sentencing court's finding the existence of a statutory aggravating circumstance(s)**; whether the evidence supports the sentencing court's finding the absence of the statutory mitigating circumstance(s)[and] whether mitigating circumstances found to be present are sufficiently substantial to call for leniency.

Id. at 196, 560 P.2d at 51 (emphasis added) (internal citation omitted);[8] see also State v. Jordan, 126 Ariz. 283, 286, 614 P.2d 825, 828 (1980) (stating that under Arizona's independent review, the court reviews whether the prosecution has proven the existence of aggravating circumstances beyond a reasonable doubt).

Based on the stated scope of Arizona's independent review, the Court must resolve whether such review exhausted Claims 29 and 30. In Claims 29 and 30, Petitioner challenges the sufficiency of the evidence in support of the aggravating circumstance found at his sentencing. When a petitioner challenges the sufficiency of the evidence in support of an aggravating circumstance, the federal habeas standard of review for such a claim was articulated in Lewis v. Jeffers, 497 U.S. 764, 780 (1990). The Jeffers Court stated that federal review of a state court's factual finding regarding the existence or non-existence of an aggravating circumstance is limited "to determining whether the state court's finding was so arbitrary and capricious as to constitute an independent due process or Eighth Amendment violation." Id. at 783. A state court's finding of the existence of an aggravating circumstance is arbitrary and capricious "if and only if no reasonable sentencer could have so concluded." Id. (applying the rational factfinder rule of Jackson v. Virginia, 443 U.S. 307 (1979) by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the aggravating circumstance beyond

---

[8] In 1994, the Arizona Supreme Court's independent review of death sentences was codified as a statutory duty. A.R.S. § 13-703.01. In 2002, in conjunction with a change to jury sentencing, Arizona's statutory independent review of death sentences was limited. See supra note 5.

1   a reasonable doubt).

2    Because Arizona's independent review of the facts in support or absence of an

3   aggravating circumstance is broader in its reach than the federal habeas standard, Arizona's

4   independent review necessarily exhausted the 8th and 14th Amendment aspects of Claims

5   29 and 30.  Thus, the Court concludes that Arizona's independent review of the aggravating

6   circumstances included within that review the 8th and 14th Amendment review articulated

7   by <u>Lewis v. Jeffers</u>.  <u>See</u> 497 U.S. at 780.  The remaining 6th Amendment aspect of Claims

8   29 and 30 is technically exhausted but procedurally defaulted because it does not allege facts

9   or law which would exempt it from preclusion and untimeliness pursuant to Rules 32.2(a)(3)

10  and 32.4(a) of the Arizona Rules of Criminal Procedure were Petitioner to return to state

11  court now.  <u>See</u> Ariz. R. Crim. P. 32.2(b), 32.1(d)-(h); <u>Coleman</u>, 501 U.S. at 732, 735 n.1.

12  The 6th Amendment aspect of Claims 29 and 30 will be barred from further consideration

13  absent a showing of cause and prejudice or a fundamental miscarriage of justice.

14  **Claim 31** **Trial Court Failed to Consider and Weigh Drug and Alcohol Usage,**
    **Possibility of Rehabilitation and Good Character as Mitigating Evidence**
15  **During Sentencing in Violation of the 5th, 6th, 8th and 14th Amendments**.

16   Petitioner contends that he exhausted Claim 31 on direct appeal. (Dkt. 28 at 103-05.)

17  On direct appeal, Petitioner argued that the trial court violated the 8th and 14th Amendment

18  by failing to consider and weigh the possibility of his rehabilitation and good character as

19  non-statutory mitigation evidence.  (Opening Br. at 12-15.)  (<u>Id.</u>)  Thus, Petitioner fairly

20  presented these issues.  However, on direct appeal, Petitioner did not fairly present the claim

21  that the trial court failed to consider drug and alcohol usage as non-statutory mitigation

22  evidence.

23   Regardless of whether he fairly presented his drug and alcohol usage claim on direct

24  appeal, Petitioner argues that the Arizona Supreme Court's independent review of his death

25  sentence exhausted whether the trial court erred in failing to consider and weigh such

26  mitigation.  (Dkt. 28 at 103-05.)  Whether such independent review exhausts a federal

27  constitutional challenge to the trial court's alleged failure to consider and weigh specific

28  - 22 -

mitigation evidence is an open question in the Ninth Circuit. Cf. Beaty, 303 F.3d at 987. Rather than resolve the more difficult procedural issue, the Court finds it judicially expedient under the AEDPA to summarily reach and deny the merits of Claim 31 under the 8th and 14th Amendment.

In Moormann v. Schriro, 426 F.3d 1044, 1055 (9th Cir. 2005), under pre-AEDPA standards, the Ninth Circuit reviewed the issue of whether a state trial court had failed to consider and give effect to all relevant mitigation evidence at sentencing. The Ninth Circuit concluded that the state trial court need not exhaustively analyze each mitigating factor as long as a reviewing federal court can discern from the record that it considered all mitigation offered by the petitioner. Id. In Moormann, because the state trial court explicitly stated that it had considered all of petitioner's mitigation evidence, the Ninth Circuit summarily denied petitioner's claim, concluding that it must rely on the state trial court's statement that it did consider petitioner's mitigation evidence. Id.

Under the more stringent AEDPA standards, Petitioner is not entitled to relief on Claim 31 unless the adjudication in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**2254(d)(1)**

To assess a habeas claim under § 2254(d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law includes the holdings of the Supreme Court at the time the petitioner's state court conviction became final.[9] See Williams v. Taylor, 529 U.S. 362, 365

---

[9]The Supreme Court's analysis of whether a claim is based on "clearly established" federal law under § 2254(d)(1) is related to the standard set out in Teague v. Lane, 489 U.S.

1   (2000). Habeas relief cannot be granted if the Supreme Court has not "broken sufficient

2   legal ground" on a constitutional principle advanced by a petitioner, even if lower federal

3   courts have decided the issue. See id. at 381.

4          A state court decision is "contrary to" clearly established federal law if it fails to apply

5   the correct controlling Supreme Court authority, or if it applied the correct authority to a case

6   involving facts materially indistinguishable from those in a controlling Supreme Court case,

7   but nonetheless reached a different result. Id. at 413; see also Lockyer v. Andrade, 538 U.S.

8   63, 72 (2003). Whether a state court's interpretation of federal law is contrary to Supreme

9   Court authority, as opposed to an unreasonable application thereof, is a question of federal

10  law to which federal courts owe no deference to the state courts. Cordova v. Baca, 346 F.3d

11  924, 929-30 (9th Cir. 2003).

12         A state court decision amounts to an "unreasonable application" under § 2254(d)(1)

13  if the state court correctly identifies the governing "clearly established" legal principle from

14  the Supreme Court's decisions, but then makes an objectively unreasonable application of

15  that principle to the facts of the petitioner's case. See Andrade, 538 U.S. at 75. An

16  "objectively unreasonable" application of federal law involves more than an incorrect or even

17  clearly erroneous application of federal law. See Williams, 529 U.S. at 410-11 ("[A] federal

18  habeas court may not issue the writ simply because that court concludes in its independent

19  judgment that the relevant state-court decision applied clearly established federal law

20  erroneously or incorrectly. Rather, that application must also be unreasonable.") In contrast

21  to the "contrary to" prong of § 2254(d)(1), the AEDPA mandates deferential review of a state

22  court's application of clearly established Supreme Court precedent. See Woodford v.

23  Visciotti, 537 U.S. 19, 24 (2002) (citing Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997)).

24         In considering a challenge under either the "contrary to" or "unreasonable

25  ─────────────────

26  288 (1989). That is, Supreme Court precedent which would qualify as an "old rule" under

27  Teague would necessarily be "clearly established" federal law under § 2254(d)(1). See
    Teague, 489 U.S. at 301.

28                                          - 24 -

1   application" prong of subsection (d)(1), state court factual determinations are presumed

2   correct pursuant to § 2254(e)(1) and can be rebutted only by clear and convincing evidence.

3   See Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir.), cert. denied 125 S.Ct. 809 (2004).

4         The clearly established Supreme Court law regarding consideration of mitigation is

5   set forth in Lockett v. Ohio and Eddings v. Oklahoma, which hold that "the Eighth and

6   Fourteenth Amendments require that the sentencer . . . not be precluded from considering,

7   *as a mitigating factor,* any aspect of a defendant's character or record and any of the

8   circumstances of the offense that the defendant proffers as a basis for a sentence less than

9   death." Eddings, 455 U.S. 104, 110 (1982) (quoting Lockett, 438 U.S. 586, 604 (1978)).

10  The Constitution and the clearly established law require only that the sentencing court hear

11  and consider all mitigation evidence, but the court may determine the *weight* to accord such

12  evidence. Id. at 114-15. In assessing Petitioner's claim for habeas relief, the Court's inquiry

13  is not to evaluate the substance of each and every piece of evidence submitted as mitigation.

14  See Jeffers v. Lewis, 38 F.3d 411, 418 (9th Cir. 1994) (holding that when it is evident that

15  all mitigating evidence was considered, trial court is not required to discuss each piece of

16  such evidence). Rather, the Court assesses whether the Arizona Supreme Court's conclusion

17  – that the trial court considered all proffered mitigation evidence – was contrary to or an

18  unreasonable application of the principles set forth in Lockett and Eddings.

19        At sentencing, the trial court specifically indicated that it had considered all of the

20  evidence presented in mitigation:

21            The court makes this and the following findings based on the files and
              record, all evidence presented at trial and at sentencing hearing, whether by the
22            state or by the defense, including all aspects of [Petitioner's] character and
              propensities, and concerning the circumstances of the murder of Darrel
23            Wagner.

24  (ROA 379.) The trial court specifically considered Petitioner's alleged drug and alcohol

25  abuse on the day of the crime and concluded that Petitioner had failed by a preponderance

26  of the evidence to prove the existence of such mitigation. (Id. at 3.) Similarly, the trial court

27  considered Petitioner's alleged possibility of rehabilitation and good character mitigation

28                                              - 25 -

1    evidence.  (<u>Id.</u> at 4.)  The trial court concluded that Petitioner had failed to prove the

2    existence of such mitigation.  (<u>Id.</u>)

3         On direct appeal, citing controlling Supreme Court precedent in <u>Lockett</u> and <u>Eddings</u>,

4    the Arizona Supreme Court concluded that "[f]rom the detailed special verdict, it is clear that

5    the trial court considered all evidence offered in mitigation." <u>Gonzales</u>, 181 Ariz. at 515, 892

6    P.2d at 851.  Subsequently, the court reviewed the trial court's conclusion that Petitioner had

7    failed to prove the existence of statutory or non-statutory mitigating circumstances.  <u>Id.</u> at

8    515-16, 892 P.2d at 851-52.   Rather than determine the existence of mitigating

9    circumstances, the supreme court independently evaluated the mitigating evidence in the

10   record and concluded that the mitigating evidence presented at sentencing was not

11   sufficiently substantial to call for leniency.  <u>Id.</u>  Thus, even if there was some possibility that

12   the trial court committed constitutional error at sentencing, the proper and independent

13   review of the mitigation and aggravation by the Arizona Supreme Court cured any such

14   defect.  <u>See</u> <u>Clemons v. Mississippi</u>, 494 U.S. 738, 750, 754 (1990) (holding that appellate

15   courts are able to fully consider mitigating evidence and are constitutionally permitted to

16   affirm a death sentence based on independent re-weighing despite any error at sentencing).

17   This Court concludes that the state supreme court's ruling was not contrary to, or an

18   unreasonable application of, <u>Lockett</u> and <u>Eddings</u>.  <u>See</u> 28 U.S.C. § 2254(d)(1).  Therefore,

19   Petitioner is not entitled to relief on Claim 31.

20   **Claim 39     Arizona's Death Penalty Statute Is Unconstitutional as a Matter of Law**

21   **Because it Improperly Places on the Petitioner the Obligation to Prove the Existence of Mitigating Factors in Violation of the 5th, 6th, 8th and 14th Amendments**.

22

23        The parties agree that Petitioner fairly presented Claim 39 as a facial challenge on

24   direct appeal, (<u>see</u> Opening Br. at 69), and that portion of the claim will be reviewed on the

     merits.  Petitioner further argues that the scope of Claim 39 includes how the trial court

25   applied Arizona's death penalty statute and whether such application violated <u>Walton v.</u>

26   <u>Arizona</u>, 497 U.S. 639 (1990).  (Dkt. 28 at 124-28.)  Petitioner asserts that the trial court's

27

28                                              - 26 -

1  application of the statute violated <u>Walton</u> in two ways.  First, at sentencing he proffered
2  evidence in support of mitigation and the State offered no rebuttal evidence, yet the trial
3  court failed to find any mitigating circumstances. (Dkt. 28 at 125.)  Second, the trial court
4  improperly applied the statute's balancing test by requiring each mitigating circumstance to
5  outweigh the combined aggravating circumstances.  (<u>Id.</u>)

6  Respondents contend that Claim 39 was not fairly presented on direct appeal to the
7  extent it is based on application of Arizona's death penalty statute. (Dkt. 47 at 29-30.)  The
8  Court agrees; the application aspect was not fairly presented.  (<u>See</u> Opening Br. at 69.)
9  Petitioner counters that the Arizona Supreme Court's independent review of his sentence
10  necessarily exhausted the application aspect of Claim 39.  (Dkt. 48 at 60.)

11  Petitioner's application argument is a state law claim alleging that the trial court
12  erroneously applied the death penalty statute.  Absent a federal claim, the Arizona Supreme
13  Court's independent sentencing review did not exhaust the application aspect of Claim 39.

14  In an effort to federalize the application argument and thus raise the possibility of
15  independent sentencing review exhausting it, Petitioner relies on <u>Walton</u>, arguing that
16  <u>Walton</u> dictates how the sentencer evaluates mitigation evidence and, if such evidence is
17  found to exist, how the sentencer applies the state's balancing test in deciding whether to
18  impose the death penalty. (Dkt. 28 at 125.)

19  To the contrary, <u>Walton</u> does not stand for the proposition that there are federal
20  constitutional standards for evaluating whether mitigating evidence exists and, if such
21  evidence is found to be established, how the sentencer applies the state's balancing test to
22  determine leniency; these are state law issues.  <u>Walton</u> only answered a facial challenge to
23  Arizona's death penalty statute.  In <u>Walton</u>, the Court rejected a challenge to Arizona's
24  statutory requirement that imposed on capital defendants the burden of establishing the
25  existence of a mitigating circumstance by a preponderance of the evidence. 497 U.S. at 650-
26  51.  Thus, the Court finds the application portion Claim 39 to be non-cognizable in a federal
27  habeas proceeding and it will be dismissed.

28

| | | |
|---|---|---|
| 1 | **Claim 45** | **Trial Counsel Failed to Object or Move for Mistrial Following Conversation Between Two Witnesses after Rule Excluding Witnesses had been Invoked in Violation of the 5th, 6th, 8th and 14th Amendments.** |
| 2 | | |
| 3 | **Claim 46** | **Trial Counsel Failed to Object or Move for Mistrial Following Testimony from Police Officer that Petitioner was Identified from Photo Lineup Only Consisting of Pictures of Individuals Previously Arrested in Violation of the 5th, 6th, 8th and 14th Amendments**. |
| 4 | | |
| 5 | | |
| 6 | **Claim 47** | **Trial Counsel Failed to Make a Proper Hearsay Objection or Move for Mistrial after Police Officer Testified to Statements Made by Witness Cathy Trinidad where Officer's Recollection and Witness Testimony were Consistent in Violation of the 5th, 6th, 8th and 14th Amendments**. |
| 7 | | |
| 8 | **Claim 48** | **Trial Counsel Failed to Object to Hearsay Offered by Police Officer Regarding Statements Made by Witness Gloria Alvarez on Identification Issues in Violation of the 5th, 6th, 8th and 14th Amendments.** |
| 9 | | |
| 10 | **Claim 49** | **Trial Counsel Failed to Offer Proof in Support of His Request for an Expert Witness on the Issue of Identification in Violation of the 5th, 6th, 8th and 14th Amendments**. |
| 11 | | |

Petitioner contends that he exhausted Claims 45-49 during PCR proceedings. Respondents argue that Petitioner procedurally defaulted these trial IAC claims and base his default upon failure to raise these claims on direct appeal. (Dkt. 54 at 9-11, 33-34.)

A procedural default results when a petitioner fails to comply with an applicable procedural rule. See Sawyer v. Whitley, 505 U.S. 333, 338 (1992). "A habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." See Coleman, 501 U.S. at 732. However, for a state court's procedural bar to preclude federal review it must be adequate. Ford, 498 U.S. at 423-24. To satisfy that requirement, the bar must have been firmly established and regularly followed at the time when the defaulted claims should have been raised. Id.

In 1993, at the time Respondents indicate that Petitioner should have brought these IAC claims on direct appeal, there was no Arizona case that required that he raise such claims on direct appeal upon penalty of default. Rather, the Arizona Supreme Court had clarified that IAC claims should be raised in PCR proceedings, rather than on direct appeal. See State v. Guerrero, 159 Ariz. 568, 569, 769 P.2d 1014, 1015 (1989) ("If defendant has a

valid ineffective assistance claim, he can and should raise the issue by an appropriate form of post-conviction relief."); State v. Valdez, 160 Ariz. 9, 15, 770 P.2d 313, 319 (1989) (stating that IAC claims should not, ordinarily, be initiated on direct appeal, rather, they should be initiated under Rule 32 post-conviction proceedings), departed from on other grounds, Krone v. Hotham, 181 Ariz. 364, 366, 890 P.2d 1149, 1151 (1995); State v. Atwood, 171 Ariz. 576, 599, 832 P.2d 593, 616 (1992) (stating that IAC claims should be initiated in Rule 32 post-conviction proceedings), overturned on other grounds by State v. Nordstrom, 200 Ariz. 229, 25 P.3d 717 (2001).  Accordingly, the bar applied by the PCR court to Claims 45-49 was not adequate to bar federal review.  See Lambright v. Stewart, 241 F.3d 1201, 1203 (9th Cir. 2001) (finding state default inadequate to bar consideration of an IAC claim that required factual development)

Respondents further contend that because Petitioner had the opportunity to present his IAC trial claims on direct appeal, he was foreclosed from presenting them at his initial Rule 32 proceeding.  (Dkt. 54 at 10.)  Respondents base their argument on the fact that, in pro per proceedings, in a motion for a new trial, Petitioner raised various trial IAC claims.[10]  (See ROA 131-140.)  In response, the trial court conducted a 3-day evidentiary hearing, at which Petitioner's trial counsel testified.  (R.T. 12/9/91, 12/16/91, and 12/17/91.)  Given that a hearing was conducted, Respondents argue that Petitioner had a developed record from which to raise trial IAC claims on direct appeal and that his failure to do so resulted in a procedural default.

However, Petitioner's procedural opportunity to raise the developed trial IAC claims on direct appeal is not the same as being required to present such claims upon penalty of default.  The Ninth Circuit holds that it is only the violation of a state procedural rule, and not the mere failure to raise a claim that triggers the procedural default.  See English v.

---

[10]      In 1991, Rule 24.1(c)(5) provided, as follows: "The court may grant a new trial for any of the following reasons: (5) For any reason not due to his own fault the defendant has not received a fair and impartial trial."  Ariz.R.Crim.P. 24.1(c)(5).

1   *United States*, 42 F.3d 473, 477 (9th Cir. 1994).  As previously stated, at the time of

2   Petitioner's direct appeal, no controlling Arizona authority required Petitioner to raise his

3   trial IAC claims in his direct appeal upon penalty of default.  Absent notice of any such

4   procedural rule, Petitioner did not commit a procedural default.  See *Ford*, 498 U.S. at 423-24

5   (stating that if the state procedural rule has not been clearly defined prior to the default, it

6   will not serve as an adequate bar to federal review).

7          Because Petitioner fairly presented Claims 45-49 in his PCR proceedings, and the

8   state courts did not apply an adequate bar, Claims 45-49 will be reviewed as violations of the

9   6th and 14th Amendments.  The remaining 8th Amendment aspect of Claims 45-49 was not

10  presented in state court and is technically exhausted but procedurally defaulted because it

11  does not allege facts or law which would exempt it from preclusion and untimeliness,

12  pursuant to Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure, were

13  Petitioner to return to state court now.  See Ariz. R. Crim. P. 32.2(b), 32.1(d)-(h); *Coleman*,

14  501 U.S. at 732, 735 n.1.  The 8th Amendment aspect of Claims 45-49 will be barred from

15  further consideration absent a showing of cause and prejudice or a fundamental miscarriage

16  of justice.

17  **Claim 50      Trial Counsel Failed to Request Second Lawyer to Assist on this Capital
                    Case as Recommended by ABA Standards in Violation of the 5th, 6th, 8th
18                  and 14th Amendments**.

19         Petitioner argues that he exhausted the 6th and 14th Amendment aspects of Claim 50

20  in PCR proceedings. (Dkt. 42 at 16.)  Respondents agree that Petitioner raised these aspects

21  of Claim 50 in PCR proceedings but contend the court found them precluded.  (Dkt. 47 at

22  34.)  The PCR court reached the merits of these aspects of Claim 50 (ROA-PCR 518, Ex. D),

23  and they will be reviewed on the merits.  The remaining 8th Amendment aspect of Claim 50

24  is technically exhausted but procedurally defaulted because it does not allege facts or law

25  which would exempt it from preclusion and untimeliness, pursuant to Rules 32.2(a)(3) and

26  32.4(a) of the Arizona Rules of Criminal Procedure, were Petitioner to return to state court

27  now.  See Ariz. R. Crim. P. 32.2(b), 32.1(d)-(h); *Coleman*, 501 U.S. at 732, 735 n.1.  The 8th

28

1  Amendment aspect of Claim 50 will be barred from further consideration absent a showing

2  of cause and prejudice or a fundamental miscarriage of justice.

3  **Claim 53**      **Petitioner Denied Fair and Adequate PCR Proceeding Because the Trial Court Denied Petitioner a New Lawyer to Replace His Assigned PCR**

4  **Counsel in Violation of the 5th, 6th, 8th and 14th Amendments**.

5  **Claim 54**      **Petitioner Denied Fair and Adequate PCR Proceeding Because Trial Court Denied Nicholas Hentoff's Motion to Be Appointed as PCR Counsel**

6  **in Violation of the 5th, 6th, 8th and 14th Amendments**.

7  **Claim 55**      **Petitioner Denied Fair and Adequate PCR Proceeding Because the Trial Court Failed to Notify Petitioner to Be Present at a Hearing to Answer the**

8  **State's Motion to Dismiss His Supplemental Petition for PCR Relief in Violation of the 5th, 6th, 8th and 14th Amendments**.

9
   Although Claims 53-55 are exhausted, they are not cognizable.  Errors in the state

10
11 PCR review process are not cognizable in federal habeas corpus proceedings because they

12 do not attack the constitutionality of a petitioner's detention but, rather, represent an attack

13 on a proceeding collateral to the detention.  See Franzen v. Brinkman, 877 F.2d 26, 26 (9th

14 Cir. 1989); see also Ortiz v. Stewart, 149 F.3d 923, 939 (9th Cir. 1998); Gerlaugh v. Stewart,

15 129 F.3d 1027, 1045 (9th Cir. 1997).  Claims 53-55 will be dismissed as not cognizable.

16 **Claim 59**      **Execution by Lethal Gas and Execution by Lethal Injection Constitutes Cruel and Unusual Punishment in Violation of the 5th, 6th, 8th and 14th**

17 **Amendments**.

18  Petitioner challenges the constitutionality of execution by lethal gas, execution by

19 lethal injection, and having to choose between two unconstitutional methods of execution.

20 (Dkt. 28 at 207-32.)  Petitioner argues that he raised and exhausted Claim 59 on direct

21 appeal.  (Dkt. 42 at 18.)  On direct appeal, Petitioner argued that execution by lethal gas

22 constitutes cruel and unusual punishment.  (Opening Br. at 68.)  Petitioner's lethal injection

23 contention and his contention regarding the choice between lethal injection and lethal gas

24 were not fairly presented in state court.  These aspects of Claim 59 are technically exhausted

25 but procedurally defaulted because they do not allege facts or law which would exempt them

26 from preclusion and untimeliness, pursuant to Rules 32.2(a)(3) and 32.4(a) of the Arizona

27 Rules of Criminal Procedure, were Petitioner to return to state court now.  See Ariz. R. Crim.

28

1   P. 32.2(b), 32.1(d)-(h); Coleman, 501 U.S. at 732, 735 n.1.  These aspects of Claim 59 will

2   be barred from further consideration absent a showing of cause and prejudice or a

3   fundamental miscarriage of justice.

4       Petitioner's constitutional challenge to execution by lethal gas was fairly presented

5   and exhausted in state court; however, it is without merit.  The Arizona Supreme Court held

6   that death by lethal gas is not cruel and unusual and that Petitioner could choose lethal

7   injection instead.  Gonzales, 181 Ariz. at 508, 892 P.2d at 843.  Pursuant to the AEDPA,

8   Petitioner is not entitled to relief on any claim adjudicated on the merits in state court unless

9   that adjudication:

10      (1) resulted in a decision that was contrary to, or involved an unreasonable
        application of, clearly established Federal law, as determined by the Supreme
11      Court of the United States; or

12      (2) resulted in a decision that was based on an unreasonable determination of
        the facts in light of the evidence presented in the State court proceeding.
13
14  28 U.S.C. § 2254(d).  To assess a habeas claim under subsection (d)(1), the Court must first

15  identify the "clearly established Federal law," if any, that governs the sufficiency of the

16  claims on habeas review.  "Clearly established" federal law is defined as the holdings of the

17  Supreme Court at the time the petitioner's state court conviction became final.  See Williams

    v. Taylor, 529 U.S. 362, 365 (2000).  Habeas relief cannot be granted if the Supreme Court
18
    has not "broken sufficient legal ground" on a constitutional principle advanced by a
19
    petitioner, even if lower federal courts have decided the issue.  See id. at 381.
20
21      Because the Supreme Court has never held that execution by lethal gas is

22  unconstitutional, see, e.g., Gomez v. Fierro, 519 U.S. 918 (1996), there is no clearly

23  established constitutional principle and habeas relief cannot be granted.  Moreover, Arizona's

24  default execution procedure is lethal injection, and Petitioner would have to choose lethal gas

25  in order for that to be his execution procedure.  In Stewart v. LaGrand (Walter), 526 U.S.

26  115, 119 (1999), the Supreme Court determined that if a prisoner chooses execution by lethal

27  gas over the default execution procedure, lethal injection, he waives any objection he might

28                                          - 32 -

1  have to execution by lethal gas.  This portion of the claim will be dismissed as meritless.

2  **II.    Cause and Prejudice and Fundamental Miscarriage of Justice**

3          In this Court's scheduling order, the Court required Petitioner to present arguments

4  of cause and prejudice and fundamental miscarriage of justice in his Traverse.  (Dkts. 8 &

5  17 ("The Traverse shall be a comprehensive responsive pleading which addresses issues of

6  exhaustion and procedural default, and <u>shall</u> present alternative arguments of cause and

7  prejudice or a fundamental miscarriage of justice, when applicable.") (emphasis added)).

8  Petitioner did not comply; he did not present arguments of cause and prejudice or a

9  fundamental miscarriage of justice.  Therefore, he has waived his opportunity to present these

10  arguments. Petitioner has not overcome any of the procedural defaults applicable to his

11  claims, therefore, all of the procedurally defaulted claims or portions of claims identified

12  above will be dismissed.

13  **III.   Premature Claim**

14          **Claim 60        Petitioner is Incompetent to be Executed in Violation of the 5th,
                              6th, 8th and 14th Amendments.**
15
16          Both Petitioner and Respondents acknowledge that this claim is not ripe and is

17  premature for federal review.  In <u>Martinez-Villareal v. Stewart</u>, 118 F.3d 628, 634 (9th Cir.
    1997), <u>aff'd</u>, 523 U.S. 637 (1998), the Ninth Circuit held that a claim of incompetency for
18
    execution "must be raised in a first habeas petition, whereupon it also must be dismissed as
19
    premature due to the automatic stay [of execution] that issues when a first petition is filed."
20
    If again presented to the district court once the claim becomes ripe for review, it shall not be
21
    treated as a second or successive petition.  <u>Id.</u> at 643-44.  Therefore, pursuant to <u>Martinez-</u>
22
    <u>Villareal</u>, the Court will dismiss Claim 60 without prejudice as premature.
23
    **IV.    Summary of Properly Exhausted Claims**
24
            As set forth herein, the following claims are properly exhausted and appropriate for
25
    review on the merits by this Court:
26
            Claim 1:     Trial Court Did Not Allow Redetermination of Probable Cause on
27                       Counts 1-4 of the Indictment in Violation of the 14th Amendment.

28                                        - 33 -

| | | |
|---|---|---|
| Claim 4: | Improperly Suggestive Photo Line-up Procedures and Improper Admission of Testimony Based on Faulty Identification Procedures in Violation of the 6th and 14th Amendments. | |
| Claim 5: | Trial Court Improperly Denied Petitioner's Motion for Experts in Violation of the 6th and 14th Amendments. | |
| Claim 7: | Trial Court Improperly Ruled Allowing Petitioner's Involuntary Statements to be Used to Impeach Him if He Chose to Testify at Trial in Violation of the 6th and 14th Amendments. | |
| Claim 9: | Trial Judge's Open Hostility toward Petitioner and Refusal to Recuse Himself Violated the 6th and 14th Amendments. | |
| Claim 13: | Trial Court Allowed Witness, Deborah Wagner, to Remain in Courtroom During Jury Selection and After She Testified at Trial in Violation of the 6th and 14th Amendments. | |
| Claim 14: | Trial Court Allowed Martha Trinidad's Testimony to be Read into the Record in Violation of the 6th and 14th Amendments. | |
| Claim 15: | Trial Court Did Not Examine Whether State Had Made Good Faith Effort to Assure Martha Trinidad's Availability for Trial Prior to Admitting Her Testimony in Violation of the 6th and 14th Amendments. | |
| Claim 16: | Trial Court Improperly Admitted Prior Testimony of Martha Trinidad Despite Lack of Reliability in Former Testimony in Violation of the 6th and 14th Amendments. | |
| Claim 17: | Trial Court's Admission of Wagner's Courtroom Identification of Petitioner was Tainted by Exposure to Petitioner at First Trial in Violation of the 6th and 14th Amendments. | |
| Claim 19 | Trial Court Improperly Failed to Declare Mistrial When Two State Witnesses Failed to Obey Exclusion Order and Stayed in the Courtroom in Violation of the 14th Amendment. | |
| Claim 20 | Trial Court Erred by Not Summoning Counsel When Jury Submitted Note to Judge and Judge Discussed Note with Jurors in Violation of the 6th and 14th Amendments. | |
| Claim 26: | Trial Court Committed Fundamental Error by Not Properly Defining Reasonable Doubt for the Jury in Jury Instructions in Violation of the 6th and 14th Amendments. | |
| Claim 27: | Trial Court Improperly Denied Petitioner Counsel Before and During His Motion for a New Trial in Violation of the 6th and 14th Amendments. | |
| Claim 29: | State Court Improperly Concluded That There Was Sufficient Evidence of Creation of Grave Risk of Harm to Another to Support the Aggravating Circumstance in Violation of the 8th and 14th | |

Amendments.

Claim 30:    State Court Improperly Concluded That There Was Sufficient Evidence of Pecuniary Gain to Support the Aggravating Circumstance in Violation of the 8th and 14th Amendments.

Claim 32:    Trial Court Failed to Consider and Weigh as Mitigation That Petitioner Was Convicted of Felony-murder, Not Premeditated Murder, in Violation of the 6th, 8th and 14th Amendments.

Claim 33:    Trial Court Improperly Allowed at Sentencing Victim's Family and Witnesses to Offer Opinion on Appropriate Punishment in Violation of the 6th, 8th and 14th Amendments.

Claim 34:    Arizona's Death Penalty Statute Precludes Sentencer from Considering All Relevant Mitigation in Violation of the 6th, 8th and 14th Amendments.

Claim 36:    Arizona's Death Penalty Statute Presumes the Death Penalty to be Appropriate Sentence in Violation of the 6th, 8th and 14th Amendments.

Claim 38     Arizona's Death Penalty Statute Is Unconstitutional Because Under the 14th Amendment Equal Protection Clause, Petitioner Is Entitled to Jury Trial at Sentencing.

Claim 39     Arizona's Death Penalty Statute Is Unconstitutional on its Face Because it Improperly Places on the Petitioner the Obligation to Prove the Existence of Mitigating Factors in Violation of the 6th, 8th and 14th Amendments.

Claim 40     Arizona's Death Penalty Statute Is Unconstitutional Because During the Sentencing Process it Lacks Ascertainable Guidelines for the Sentencer to Follow in Weighing Aggravating Circumstances Versus Mitigating Factors in Violation of the 6th, 8th and 14th Amendments.

Claim 41:    Arizona's Death Penalty Statute Is Unconstitutional Because it Denies the Right to Voir Dire the Sentencing Judge Regarding Possible Bias Towards the Petitioner in Violation of the 6th, 8th and 14th Amendments.

Claim 42     Arizona's Death Penalty Statute Is Unconstitutional Because it Leaves to the Prosecutor's Discretion Whether or Not Death Penalty Will Be Sought in Each Case in Violation of the 6th, 8th and 14th Amendments.

Claim 45     Trial Counsel Failed to Object or Move for Mistrial Following Conversation Between Two Witnesses after Rule Excluding Witnesses Had Been Invoked in Violation of the 6th and 14th Amendments.

Claim 46     Trial Counsel Failed to Object or Move for Mistrial Following Testimony from Police Officer that Petitioner was Identified from Photo Lineup only Consisting of Pictures of Individuals Previously Arrested in Violation of the 6th and 14th Amendments.

| | |
|---|---|
| Claim 47 | Trial Counsel Failed to Make a Proper Hearsay Objection or Move for Mistrial after Police Officer Testified to Statements Made by Witness Cathy Trinidad where Officer's Recollection and Witness Testimony Were Consistent in Violation of the 6th and 14th Amendments. |
| Claim 48 | Trial Counsel Failed to Object to Hearsay Offered by Police Officer Regarding Statements Made by Witness Gloria Alvarez on Identification Issues in Violation of the 6th and 14th Amendments. |
| Claim 49 | Trial Counsel Failed to Offer Proof in Support of His Request for an Expert Witness on the Issue of Identification in Violation of the 6th and 14th Amendments. |
| Claim 50 | Trial Counsel Failed to Request Second Lawyer to Assist on this Capital Case as Recommended by ABA Standards in Violation of the 6th and 14th Amendments. |

Based on the foregoing,

**IT IS HEREBY ORDERED** that the following Claims are **DISMISSED WITH PREJUDICE**:  (a) Claims 53-55 for failure to state cognizable grounds for habeas relief; (b) the procedurally barred or non-cognizable portions of Claims 1 (in part), 4 (in part), 5 (in part), 6, 7 (in part), 8, 10, 11, 18, 28, 29 (in part), 30 (in part), 39 (in part), and 45-50 (in part), 59 (in part) as set forth in this Order; and (iii) Claim 31, Claim 59 (in part) on the merits as a matter of law.

**IT IS FURTHER ORDERED** that Claim 60 is **DISMISSED WITHOUT PREJUDICE** as premature.

**IT IS FURTHER ORDERED** that, no later than **forty-five (45) days** following entry of this Order, Petitioner shall file a Memorandum regarding the merits *only* of the claims set forth in Section IV of this Order.  The Merits Memorandum shall specifically identify and apply appropriate AEDPA standards of review *to each claim for relief* and shall not simply restate facts and argument contained in the amended petition.  Petitioner shall also identify in the Merits Memorandum:  (1) each claim for which further evidentiary development is sought; (2) the facts or evidence sought to be discovered, expanded or presented at an evidentiary hearing; (3) why such evidence was not developed in state court; and (4) why the failure to develop the claim in state court was not the result of lack of diligence, in

1    accordance with the Supreme Court's decision in <u>Williams v. Taylor</u>, 529 U.S. 420 (2000).

2    **IT IS FURTHER ORDERED** that no later than **forty-five (45) days** following the

3    filing of Petitioner's Memorandum, Respondents shall file a Response Re: Merits.

4    **IT IS FURTHER ORDERED** that no later than **thirty (30) days** following the filing

5    of Respondents' Response, Petitioner may file a Reply.

6    **IT IS FURTHER ORDERED** that if, pursuant to LRCiv 7.2(g), Petitioner or

7    Respondents file a Motion for Reconsideration of this Order, such motion shall be filed

8    within **fifteen (15) days** of the filing of this Order.  The filing and disposition of such motion

9    does not toll the time for the filing of the merits briefs scheduled under this Order.

10   **IT IS FURTHER ORDERED** that the Clerk of the Court, pursuant to Federal Rule

11   of Civil Procedure 25(d), shall substitute Dora B. Schriro for Terry Stewart as Director of the

12   Arizona Department of Corrections.  The Clerk shall update the title of this case to reflect

13   the substitution of Dora Schriro as the Director of the Department of Corrections.

14   **IT IS FURTHER ORDERED** that the Clerk of Court forward a copy of this Order

15   to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, AZ 85007-3329.

16   DATED this 6th day of January, 2006.

17

18

19                          Stephen M. McNamee
20                          Chief United States District Judge

21

22

23

24

25

26

27

28

- 37 -