1    **WO**

2

3

4

5

6

7              **IN THE UNITED STATES DISTRICT COURT**

8                **FOR THE DISTRICT OF ARIZONA**

9

10   Ernest Valencia Gonzales,              )   No. CV-99-2016-PHX-SMM
                                            )
11              Petitioner,                 )
                                            )
12   vs.                                    )   DEATH PENALTY CASE
                                            )
13                                          )
     Dora B. Schriro, et al.,               )   **ORDER**
14                                          )
                Respondents.                )
15                                          )
                                            )
16                                          )

17          On June 19, 2008, these proceedings were stayed by order of the Court of Appeals for

18   the Ninth Circuit pending a ruling on Petitioner's emergency petition for writ of mandamus.

19   (Doc. 199.)  The Ninth Circuit subsequently granted the mandamus petition, remanding the

20   matter to this Court to determine Petitioner's competency to assist counsel.  *In re Gonzales*,

21   623 F.3d 1242 (9th Cir. 2010).  However, on January 8, 2013, the United States Supreme

22   Court unanimously reversed the Ninth Circuit's order.  *Ryan v. Gonzales*, 133 S. Ct. 696

23   (2013). On June 6, 2013, the Ninth Circuit ordered this matter "remanded to the district court

24   for further proceedings consistent with the Supreme Court's decision" in *Gonzales*.  (Doc.

25   206.)  It appearing that the Ninth Circuit's stay of proceedings has been lifted, the Court

26   herein orders briefing on the merits of Petitioner's remaining claims.

27

28

**BACKGROUND**

On November 15, 1999, Petitioner, an Arizona inmate sentenced to death, commenced these proceedings by filing a *pro forma* petition for a writ of habeas corpus. (Doc. 1.) The Court appointed the Federal Public Defender's Office as counsel. (Doc. 8.) On December 27, 1999, the Court issued a case management order setting a deadline for the filing of an amended petition. (Doc. 17.) Citing Rule 2 of the Rules Governing § 2254 Cases, the order required the amended petition to "include every known constitutional error or deprivation entitling Petitioner to habeas relief." (*Id.* at 2.) The order further provided that the amended petition shall include a "'Statement of Exhaustion,' specifically asserting when and where each ground for relief was raised in the state courts. *See Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998)." (*Id.*)

On July 17, 2000, Petitioner filed a 237-page amended petition raising 60 claims for relief. (Doc. 28.) He failed, however, to file the required statement of exhaustion. The Court, granting Respondents' motion to compel, directed Petitioner to comply with the December 1999 scheduling order. On September 14, 2000, Petitioner notified the Court that he had filed a petition for writ of mandamus in the court of appeals. Thereafter, the Court denied his request for a stay of proceedings and for additional time to file the statement of exhaustion. (Doc. 40.) On October 6, 2000, Petitioner filed the statement of exhaustion. (Doc. 42.) Petitioner simultaneously filed a notice of withdrawal of claims, voluntarily withdrawing 13 unexhausted habeas claims from consideration by the Court. (Doc. 43.) The notice indicated that Petitioner had initiated a post-conviction-relief (PCR) proceeding in state court to exhaust the withdrawn claims, but did not request a stay of federal proceedings on this basis. (*Id.* at 2.) On October 16, 2000, the court of appeals denied the mandamus petition as moot.[1]

---

[1]     On this same day the court of appeals summarily denied on the merits a nearly identical mandamus petition filed by the Federal Public Defender in another Arizona capital habeas case. *See Walden v. United States District Court*, No. 00-71244 (9th Cir. filed Oct. 16, 2000).

In February 2001, Petitioner, acting pro se, requested that his state-court-appointed PCR counsel be removed and that he be permitted to represent himself in his successive PCR proceeding. (Doc. 102-1 at 3-5.) The state court ordered a mental health examination to determine whether Petitioner was competent to waive counsel. (*Id.* at 6-7.) The court-appointed expert, Dr. Jack Potts, examined Petitioner and concluded that he was paranoid and delusional. (*Id.* at 10.) In August 2001, based on Dr. Potts's conclusions, the court found Petitioner incompetent to waive counsel and represent himself. (*Id.* at 26.)

In December 2001, on the day Petitioner's successive PCR petition was due, counsel filed a motion to hold the case in abeyance pending restoration of Petitioner's competency. The motion asserted that Petitioner's inability to rationally communicate with counsel precluded her from developing a claim of incompetency at the time of trial and sentencing. (Doc. 102 at 30-36.) The state court denied the motion, finding that: (1) there was no right in this particular case to a competency determination regarding Petitioner's ability to assist counsel prior to the filing of a successive petition; (2) any claim of legal incompetency at trial and sentencing in Petitioner's case was not "cognizable" in a successive PCR proceeding because it would rely on neither newly-discovered evidence nor actual innocence, the only potentially applicable exceptions to preclusion under Rule 32.2(b) of the Arizona Rules of Criminal Procedure; and (3) even if the claim was cognizable, counsel had not set forth "sufficient reasons for not raising the claim in a previous petition or in a timely manner or demonstrated why defendant's competency is essential to filing the prospective second Rule 32 proceeding." (*Id.* at 45.)

In February 2002, state counsel filed a successive PCR petition asserting only four claims, including that Petitioner had a right to assist counsel in a second PCR proceeding, that he was entitled to an evidentiary hearing to determine his current competency, and that he was incompetent at the time of trial and sentencing. (Doc. 108-1 at 3-24.) State PCR counsel did not raise any of the claims withdrawn from the amended federal habeas petition. (*Id.*) The state court denied the petition, again explaining that Petitioner had failed to present a "colorable claim . . . that newly discovered evidence shows defendant was incompetent to

1  stand trial." (*Id.* at 40.)  Counsel filed a petition for review, which the Arizona Supreme

2  Court denied on October 28, 2003.  (Doc. 108-2 at 6.)

3        Following withdrawal of the 13 unexhausted claims in October 2000, the parties

4  briefed the procedural status of Petitioner's remaining claims.  This concluded in February

5  2001, with the filing of Petitioner's sur-reply.  (Doc. 59.)  The procedural status of

6  Petitioner's claims remained under advisement until September 2002 when, following the

7  United States Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002) (requiring

8  jury determination of aggravating factors necessary for imposition of the death penalty), the

9  Court stayed Petitioner's sentencing-related claims pending exhaustion in state court of a

10  claim based on *Ring*.  (Doc. 75.)  Petitioner initiated another state PCR proceeding, and the

11  state court consolidated it with the already pending PCR petition.  As previously noted, the

12  Arizona Supreme Court denied review of the petition in October 2003.  (Doc. 81.)  In July

13  2004, following the United States Supreme Court's decision in *Schriro v. Summerlin*, 542

14  U.S. 348 (2004) (holding that *Ring* does not apply retroactively to pending cases), the Court

15  lifted the stay.

16        Over the next eighteen months, while the matter was under advisement, Petitioner did

17  not seek amendment to reincorporate the 13 withdrawn claims or to add the claims litigated

18  in the second PCR petition.  Nor did he seek a competency determination by this Court,

19  despite the June 2003 decision in *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803 (9th Cir.

20  2003), *abrogated by Gonzales*, 133 S. Ct. at 696, which first recognized a statutory right to

21  competence in federal habeas proceedings.  In January 2006, the Court entered its order

22  regarding the procedural status of Petitioner's habeas claims.  (Doc. 97.)  The Court

23  dismissed some of the claims on procedural grounds or as plainly meritless, and established

24  a deadline for Petitioner to submit briefing on the merits of the remaining claims.  (*Id.*)

25        Shortly thereafter, Petitioner's counsel moved to stay this action pursuant to *Rohan*,

26  contending that Petitioner was incapable of rationally communicating with or assisting

27  counsel. (Doc. 102.)  The motion indicated that since October 2003 Petitioner had refused

28  some 26 attempted visits from habeas counsel and support staff, who wished to "discuss

1   these upcoming proceedings, including merits briefing and requests for evidentiary

2   development." (*Id.* at 5-6.) The motion and subsequent supplemental briefs further indicated

3   that Petitioner's assistance was necessary for briefing the merits of numerous exhausted

4   claims, amending the first amended habeas petition, and identifying new claims not yet

5   raised. (Doc. 102 at 6; Doc. 108 at 6-8; Doc. 184 at 9-16.)

6       After two years of litigation regarding Petitioner's competency and the issue of

7   forcible medication, the Court entered an order on April 23, 2008, denying Petitioner's

8   motions for a competency hearing and to stay these proceedings. (Doc. 187.) The Court,

9   applying the *Rohan* framework, determined that Petitioner's remaining claims were record-

10  based or involved purely legal issues, and therefore would not potentially benefit from

11  Petitioner's ability to communicate rationally with counsel. Petitioner's emergency petition

12  for writ of mandamus followed.

13                              **DISCUSSION**

14      In its June 6, 2013 order, the Ninth Circuit neither granted nor denied the mandamus

15  petition. Rather, the panel "remanded" the matter for further proceedings consistent with the

16  Supreme Court's decision in this case. In doing so, the panel noted that its original decision

17  granting mandamus "discussed only Gonzales's exhausted claims because his unexhausted

18  claims were procedurally defaulted for purposes of federal habeas under *Coleman v.*

19  *Thompson*, 501 U.S. 722, 735 n.1 (1991)." (Doc. 206 at 1-2.) Citing the United States

20  Supreme Court's subsequent decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012),

21  recognizing for the first time an exception to *Coleman* for substantial trial-level

22  ineffectiveness claims, the panel further directed that "with respect to Gonzales's

23  unexhausted claims that may meet the *Martinez* exception to procedural default, the district

24  court shall consider whether to exercise its discretion to grant a stay" based on Petitioner's

25  alleged incompetency to assist counsel. The panel further specifically identified Claim 52,

26  alleging ineffective assistance at sentencing, as one that may benefit from Petitioner's

27  assistance.

28

1    The Ninth Circuit has repeatedly emphasized that mandamus is an "extraordinary"
2    remedy and is appropriate only if the factors set forth in *Bauman v. United States Dist. Court*,
3    557 F.2d 650, 654-55 (9th Cir. 1977), weigh in favor of relief.  *See, e.g.*, *Calderon v. United*
4    *States Dist. Court* (*Kelly V*).  In its original decision in this case, the Ninth Circuit determined
5    that the *Bauman* factors justified mandamus relief.  However, that order was unanimously
6    reversed by the Supreme Court.  Thus, the jurisdictional basis of the Ninth Circuit's June 6,
7    2013 order is unclear, and it appears to be merely advisory.  *See generally United States v.*
8    *Guerrero*, 693 F.3d 990, 995 (9th Cir. 2012) (observing that appellate court lacks jurisdiction
9    to review non-final rulings absent satisfaction of the requirements for collateral order review
10   or writ of mandamus).

11   In any event, the Court concludes that further consideration of Petitioner's
12   unexhausted claims is unwarranted because each was voluntarily withdrawn.  The Ninth
13   Circuit's order suggests that the claims were found procedurally defaulted for failure to
14   exhaust.  However, as set forth in the background section above, Petitioner *sua sponte*
15   withdrew the claims (including Claim 52) prior to the Court determining the procedural
16   status of his claims, and Petitioner never sought amendment to reincorporate them back into
17   the petition.  Moreover, in the Court's 2008 order denying the motion for a competency
18   hearing, which was challenged by Petitioner in his petition for mandamus, the Court
19   expressly addressed the 13 withdrawn claims, noting that Petitioner had not moved for
20   amendment and that the claims were no longer before the Court.  (Doc. 187 at 18.)  For this
21   reason, the Court found then, as it does again now, that Petitioner's alleged incompetency
22   to assist counsel with regard to these claims is a moot question.

23   The Supreme Court determined in this case that Petitioner's alleged incompetency
24   provides no barrier to consideration of his properly exhausted claims because each is record
25   based or resolvable as a matter of law.[2]  *Gonzales*, 133 S. Ct. at 708.  Therefore, this Court

---

27   [2]    This Court reached the same conclusion in its order denying Petitioner's
     request for a competency determination, observing that the remaining, properly exhausted
28   claims could not benefit from Petitioner's personal input because each was resolvable

sets forth below a merits briefing schedule to move these claims toward final resolution. Because Petitioner's counsel have had ample time to research and brief the merits of the claims, any motion for a continuance is disfavored. Furthermore, the Court intends for the parties to adhere to this briefing schedule regardless of any litigation that may be contemplated concerning claims not currently before the Court.

For the benefit of the parties, the Court re-lists the claims it found properly exhausted and appropriate for review on the merits:

| Claim 1: | Trial Court Did Not Allow Redetermination of Probable Cause on Counts 1-4 of the Indictment in Violation of the 14th Amendment. |
| Claim 4: | Improperly Suggestive Photo Line-up Procedures and Improper Admission of Testimony Based on Faulty Identification Procedures in Violation of the 6th and 14th Amendments. |
| Claim 5: | Trial Court Improperly Denied Petitioner's Motion for Experts in Violation of the 6th and 14th Amendments. |
| Claim 7: | Trial Court Improperly Ruled Allowing Petitioner's Involuntary Statements to be Used to Impeach Him if He Chose to Testify at Trial in Violation of the 6th and 14th Amendments. |
| Claim 9: | Trial Judge's Open Hostility toward Petitioner and Refusal to Recuse Himself Violated the 6th and 14th Amendments. |
| Claim 13: | Trial Court Allowed Witness, Deborah Wagner, to Remain in Courtroom During Jury Selection and After She Testified at Trial in Violation of the 6th and 14th Amendments. |
| Claim 14: | Trial Court Allowed Martha Trinidad's Testimony to be Read into the Record in Violation of the 6th and 14th Amendments. |
| Claim 15: | Trial Court Did Not Examine Whether State Had Made Good Faith Effort to Assure Martha Trinidad's Availability for Trial Prior to Admitting Her Testimony in Violation of the 6th and 14th Amendments. |
| Claim 16: | Trial Court Improperly Admitted Prior Testimony of Martha Trinidad Despite Lack of Reliability in Former Testimony in Violation of the 6th and 14th Amendments. |
| Claim 17: | Trial Court's Admission of Wagner's Courtroom Identification of |

irrespective of Petitioner's capacity for rational communication with counsel. The Court did not find that Petitioner's competency to assist counsel is irrelevant for all purposes, only that it provides no basis for forestalling resolution of claims for which Petitioner's assistance is plainly unnecessary.

|  |  |
|---|---|
|  | Petitioner was Tainted by Exposure to Petitioner at First Trial in Violation of the 6th and 14th Amendments. |
| Claim 19 | Trial Court Improperly Failed to Declare Mistrial When Two State Witnesses Failed to Obey Exclusion Order and Stayed in the Courtroom in Violation of the 14th Amendment. |
| Claim 20 | Trial Court Erred by Not Summoning Counsel When Jury Submitted Note to Judge and Judge Discussed Note with Jurors in Violation of the 6th and 14th Amendments. |
| Claim 26: | Trial Court Committed Fundamental Error by Not Properly Defining Reasonable Doubt for the Jury in Jury Instructions in Violation of the 6th and 14th Amendments. |
| Claim 27: | Trial Court Improperly Denied Petitioner Counsel Before and During His Motion for a New Trial in Violation of the 6th and 14th Amendments. |
| Claim 29: | State Court Improperly Concluded That There Was Sufficient Evidence of Creation of Grave Risk of Harm to Another to Support the Aggravating Circumstance in Violation of the 8th and 14th Amendments. |
| Claim 30: | State Court Improperly Concluded That There Was Sufficient Evidence of Pecuniary Gain to Support the Aggravating Circumstance in Violation of the 8th and 14th Amendments. |
| Claim 32: | Trial Court Failed to Consider and Weigh as Mitigation That Petitioner Was Convicted of Felony-murder, Not Premeditated Murder, in Violation of the 6th, 8th and 14th Amendments. |
| Claim 33: | Trial Court Improperly Allowed at Sentencing Victim's Family and Witnesses to Offer Opinion on Appropriate Punishment in Violation of the 6th, 8th and 14th Amendments. |
| Claim 34: | Arizona's Death Penalty Statute Precludes Sentencer from Considering All Relevant Mitigation in Violation of the 6th, 8th and 14th Amendments. |
| Claim 36: | Arizona's Death Penalty Statute Presumes the Death Penalty to be Appropriate Sentence in Violation of the 6th, 8th and 14th Amendments. |
| Claim 38 | Arizona's Death Penalty Statute Is Unconstitutional Because Under the 14th Amendment Equal Protection Clause, Petitioner Is Entitled to Jury Trial at Sentencing. |
| Claim 39 | Arizona's Death Penalty Statute Is Unconstitutional on its Face Because it Improperly Places on the Petitioner the Obligation to Prove the Existence of Mitigating Factors in Violation of the 6th, 8th and 14th Amendments. |
| Claim 40 | Arizona's Death Penalty Statute Is Unconstitutional Because During the Sentencing Process it Lacks Ascertainable Guidelines for the |

Sentencer to Follow in Weighing Aggravating Circumstances Versus Mitigating Factors in Violation of the 6th, 8th and 14th Amendments.

Claim 41:   Arizona's Death Penalty Statute Is Unconstitutional Because it Denies the Right to Voir Dire the Sentencing Judge Regarding Possible Bias Towards the Petitioner in Violation of the 6th, 8th and 14th Amendments.

Claim 42    Arizona's Death Penalty Statute Is Unconstitutional Because it Leaves to the Prosecutor's Discretion Whether or Not Death Penalty Will Be Sought in Each Case in Violation of the 6th, 8th and 14th Amendments.

Claim 45    Trial Counsel Failed to Object or Move for Mistrial Following Conversation Between Two Witnesses after Rule Excluding Witnesses Had Been Invoked in Violation of the 6th and 14th Amendments.

Claim 46    Trial Counsel Failed to Object or Move for Mistrial Following Testimony from Police Officer that Petitioner was Identified from Photo Lineup only Consisting of Pictures of Individuals Previously Arrested in Violation of the 6th and 14th Amendments.

Claim 47    Trial Counsel Failed to Make a Proper Hearsay Objection or Move for Mistrial after Police Officer Testified to Statements Made by Witness Cathy Trinidad where Officer's Recollection and Witness Testimony Were Consistent in Violation of the 6th and 14th Amendments.

Claim 48    Trial Counsel Failed to Object to Hearsay Offered by Police Officer Regarding Statements Made by Witness Gloria Alvarez on Identification Issues in Violation of the 6th and 14th Amendments.

Claim 49    Trial Counsel Failed to Offer Proof in Support of His Request for an Expert Witness on the Issue of Identification in Violation of the 6th and 14th Amendments.

Claim 50    Trial Counsel Failed to Request Second Lawyer to Assist on this Capital Case as Recommended by ABA Standards in Violation of the 6th and 14th Amendments.

(Doc. 97 at 33-36.)

Based on the foregoing,

**IT IS HEREBY ORDERED** that no later than **September 20, 2013**, Petitioner shall file a merits brief regarding the above-listed claims. The brief shall specifically identify and apply appropriate AEDPA standards of review *to each claim for relief* and shall not simply restate facts and argument contained in the amended petition. Petitioner shall also identify in the merits brief: (1) each claim for which further evidentiary development is sought; (2) the facts or evidence sought to be discovered, expanded, or presented at an evidentiary hearing; (3) why such evidence was not developed in state court; and (4) why the failure to

1   develop the claim in state court was not the result of lack of diligence, in accordance with the

2   Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 420 (2000).

3           **IT IS FURTHER ORDERED** that Respondents shall file a response to the merits

4   brief no later than **October 18, 2013**.  If Petitioner files a reply, he shall do so no later than

5   **November 8, 2013**.

6           DATED this 1st day of July, 2013.

7

8

9                                           Stephen M. McNamee
                                    Senior United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28